IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LAURO GRIMALDO RINCON, TDCJ #1922349, Petitioner, v. LORIE DAVIS, Director, Texas Department of Criminal Justice - Correctional Institutions Division, Respondent. | CIVIL ACTION NO. H-18-0312 |

## MEMORANDUM OPINION AND ORDER

Lauro Grimaldo Rincon has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1), seeking relief under 28 U.S.C. § 2254 from a conviction for possession with intent to deliver a controlled substance. Pending before the court is Respondent Lorie Davis's Motion for Summary Judgment With Brief in Support ("Respondent's MSJ") (Docket Entry No. 14). Rincon has not filed a response and his time to do so has expired. After considering the pleadings, the state court record, and the applicable law, the court will grant Respondent's MSJ and will dismiss this action for the reasons explained below.

## I. Background

A grand jury in Montgomery County, Texas, returned an indictment against Rincon in case number 12-02-01982-CR, charging him with "possess[ion] with intent to deliver a controlled substance, namely, cocaine, in an amount of 400 grams or more . . . ."[1] The indictment was enhanced for purposes of punishment as a habitual offender with allegations that Rincon had at least two prior felony convictions -- for possession with intent to distribute marijuana and for attempted murder.[2] A jury in the 9th District Court for Montgomery County found Rincon guilty as charged in the indictment and sentenced him to 99 years' imprisonment.[3]

On direct appeal Rincon argued that the trial court abused its discretion by refusing to order the state to divulge the identity of a confidential informant and made several erroneous evidentiary rulings.[4] An intermediate court of appeals rejected all of Rincon's arguments after summarizing the evidence presented at trial, as follows:

> The Informant, cooperating with the United States Drug Enforcement Agency (DEA), negotiated with Angel Vazquez to purchase twenty kilograms of cocaine for $710,000. DEA Special Agent Joel Saldana testified that Vazquez was

---

[1]Indictment, Docket Entry No. 15-13, p. 14. For purposes of identification, all page numbers refer to the pagination imprinted by the court's electronic filing system, CM/ECF.

[2]Id.

[3]Judgment of Conviction by Jury, Docket Entry No. 15-13, p. 92.

[4]Brief for Appellant, Docket Entry No. 15-8, pp. 3-5.

brokering the deal, so Vazquez would put the buyer and seller together and would make a profit out of the deal. The Informant and an undercover DEA agent met with Vazquez and others in December 2012 to complete the sale. The sale fell through, however, because the sellers wanted to see the money first, and the DEA did not have the money.

Agent Saldana testified that Vazquez seemed determined to make the sale. Vazquez told the Informant that he had found someone else to supply the cocaine. Over [Rincon's] hearsay and Confrontation Clause objections, the trial court admitted several Spanish-to-English translated transcripts of recorded telephone calls including Vazquez, the Informant, and the Informant's wife between February 11, 2013, and February 18, 2013. During the calls, Vazquez repeatedly referred to unidentified owners of the cocaine as "they," "he," and "those people."[] He also referenced his conversations with "the old man."[]

At around noon on February 22, Agent Saldana and Houston Police Officer Jose Benevides (both undercover) met with Vazquez, Vazquez's brother, and [Rincon] at a motel in Houston. During the meeting, Vazquez referred to [Rincon] as "el viejo," which means "older man." Agent Saldana testified that Vazquez said, "This is the man that is going to make it happen. He knows the source of supply. He is good friends with them. He's going to make it happen. That's why I brought him with me." Vazquez continued, "Look at him. He looks like a day laborer. No one ever suspects of him being involved in this."

Agent Saldana brought a vehicle with secret trap compartments for storing cocaine. Agent Saldana showed the three suspects how to use the trap compartments although Vazquez was already familiar with the vehicle from his prior dealings with the Informant. [Rincon] sat in the passenger seat of the car to look at the trap near the glove box. Agent Saldana asked Vazquez to send Saldana a picture of the cocaine next to the vehicle, and Vazquez agreed. As the three suspects left in the trap vehicle, Vazquez said that [Rincon] was going to take them to where the cocaine was located. The three suspects went to the stash house, which was then placed under surveillance.[]

Because Agent Saldana's Blackberry could not receive pictures, Vazquez sent the picture of the cocaine

>           (State's Exhibit 183) to the Informant, who forwarded it
>      to Officer Benevides. Later that evening, Agent Saldana
>      met with Vazquez and [Rincon] in the parking lot of a
>      restaurant. Agent Saldana asked Vazquez to show Saldana
>      one kilogram of cocaine before consummating the
>      transaction. At this request, Vazquez became "very
>      agitated." [Rincon] got out of the vehicle, and Agent
>      Saldana said, "I just want to see one kilo." [Rincon]
>      appeared receptive because he said "un kilo" or "solo
>      kilo," which to Agent Saldana was "like, oh, it's only
>      one kilo. Let's be reasonable." But Vazquez became
>      belligerent and was trying to get Agent Saldana in their
>      vehicle. Agent Saldana refused, went to his vehicle, and
>      drove away while radioing Officer Benevides to activate
>      a "kill switch" for the trap vehicle. This immobilized
>      the vehicle. Ultimately, [Rincon] and Vazquez were
>      arrested, and two cell phones were seized — a Samsung
>      phone and an LG phone.
>
>      Meanwhile, a van occupied by Vazquez's brother and two
>      other people left the stash house. A deputy with the
>      Montgomery County Sheriff's Department stopped the van
>      and searched it after obtaining the driver's consent.
>      The deputy found ten kilograms of cocaine and at least
>      four cell phones.

Rincon v. State, No. 14-14-00535-CR, 2016 WL 675410, at *1-2 (Tex. App. — Houston [14th Dist.] Feb. 18, 2016) (footnotes omitted). Thereafter, the Texas Court of Criminal Appeals refused Rincon's petition for discretionary review.

Rincon challenged his conviction further by filing an Application for a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction Under [Texas] Code of Criminal Procedure Article 11.07 ("Application") with the trial court.[5] Rincon argued that he was denied effective assistance of counsel at trial and on direct appeal, and he also asserted multiple claims of prosecutorial misconduct in connection with the state's

---

[5]Application, Docket Entry No. 16-37, pp. 6-31.

-4-

presentation of its case at trial.[6] The trial court entered findings of fact and concluded that Rincon was not entitled to relief.[7] The Texas Court of Criminal Appeals agreed and denied relief without a written order on findings made by the trial court without a hearing.[8]

Rincon now contends that he is entitled to federal habeas relief from his conviction under 28 U.S.C. § 2254(d) for the following reasons:

1. He was denied effective assistance of counsel at trial because his attorney failed to offer an affidavit or testimony from a co-defendant who claimed "total responsibility" for the controlled substance on which the petitioner's conviction was based.

2. He was denied effective assistance of counsel on direct appeal because his attorney failed challenge the sufficiency of the evidence or his trial attorney's failure to call a co-defendant as a defense witness.

3. The prosecution failed to timely disclose exculpatory evidence in the form of an affidavit from a co-defendant, which showed that the petitioner had no "affirmative links" to the controlled substance.[9]

The respondent moves for summary judgment, arguing that Rincon is not entitled to relief because his ineffective-assistance claims

---

[6] See id. at 11-28.

[7] Findings of Fact and Conclusions of Law, Docket Entry No. 16-39, pp. 24-27.

[8] Action Taken on Writ No. 87,645-01, Docket Entry No. 16-35, p. 1.

[9] Petition, Docket Entry No. 1, pp. 6-7.

were properly rejected on state habeas corpus review, and his claim of prosecutorial misconduct is procedurally barred as well as without merit.[10]

## II. Standard of Review

A federal habeas corpus petitioner "must exhaust all available state remedies before he may obtain federal habeas relief." Sones v. Hargett, 61 F.3d 410, 414 (5th Cir. 1995). To the extent that the petitioner's claims were adjudicated on the merits in state court, his claims are subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d). Under the AEDPA a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Likewise, if a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"'A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it

---

[10]Respondent's MSJ, Docket Entry No. 14, pp. 9-19.

reaches a different conclusion than the Supreme Court on materially indistinguishable facts.'" Matamoros v. Stephens, 783 F.3d 212, 215 (5th Cir. 2015) (citations omitted). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

The AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' . . . [which] 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (citations omitted). This standard is intentionally "difficult to meet" because it was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Richter, 131 S. Ct. at 786 (quoting Jackson v. Virginia, 99 S. Ct. 2781, 2796, n.5 (1979) (Stevens, J., concurring)).

A state court's factual determinations are also entitled to deference on federal habeas corpus review. Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to implicit or "'unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" Murphy v. Davis, — F.3d —, 2018 WL 4042362, at *13 (5th Cir. Aug. 24, 2018) (quoting Valdez v. Cockrell, 274 F.3d 941, 948 n.11 (5th Cir. 2001)); see also Garcia v. Quarterman, 454 F.3d 441, 444-45 (5th Cir. 2006) (citing Summers v. Dretke, 431 F.3d 861, 876 (5th Cir. 2005); Young v. Dretke, 356 F.3d 616, 629 (5th Cir. 2004)). A federal habeas corpus court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015) (quoting Wood v. Allen, 130 S. Ct. 841, 849 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." Id.

### III. Discussion

A. Ineffective Assistance of Counsel at Trial (Claim 1)

Rincon contends that his trial attorney (John E. Choate, Jr.) was ineffective for failing to offer an affidavit or present testimony from a co-defendant who claimed responsibility for

-8-

possessing the controlled substance that resulted in Rincon's conviction.[11] Claims for ineffective assistance of counsel are governed by the standard announced in Strickland v. Washington, 104 S. Ct. 2052 (1984). To prevail under the Strickland standard a defendant must demonstrate (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. Id. at 2064. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

"To satisfy the deficient performance prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" Hoffman v. Cain, 752 F.3d 430, 440 (5th Cir. 2014) (quoting Strickland, 104 S. Ct. at 2064). This is a "highly deferential" inquiry; "[t]here is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 104 S. Ct. at 2065).

To satisfy the prejudice prong "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S. Ct. at 2068. A habeas petitioner must "affirmatively prove prejudice." Id. at 2067. A petitioner cannot satisfy the second prong of Strickland with mere speculation

---

[11]Petition, Docket Entry No. 1, p. 6.

and conjecture. See Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to demonstrate either deficient performance or actual prejudice. See Day v. Quarterman, 566 F.3d 527, 540-41 (5th Cir. 2009).

At the state habeas corpus court's request, Choate provided an affidavit in response to Rincon's claim that he failed to interview a co-defendant with exculpatory information.[12] Choate explained that he interviewed a co-defendant identified as Jose D. Vazquez, who had already pled guilty to the drug trafficking charges against him and had signed an affidavit trying to exonerate the other defendants.[13] Choate determined that Vazquez was "highly involved" in the charged offense and that he had information that implicated Rincon.[14] Choate noted that Vazquez would be subject to cross-examination if he testified, which could be "very damaging" to Rincon.[15] After discussing it with his client, Choate concluded that it was "too much of a risk" to call Vazquez as a witness at trial.[16] Choate asked to speak with Rincon's other co-defendants, who were represented by counsel pending trial, but was not given permission to interview them.[17]

---

[12] Affidavit, Docket Entry No. 16-39, pp. 8-9.

[13] See id. at 9.

[14] Id.

[15] Id.

[16] Id.

[17] Id.

In its findings of fact, the state habeas corpus court observed that it was "familiar with the quality of Choate's legal representation" and found that he was "well-qualified to serve as appointed counsel in felony cases."[18] After finding that Choate's affidavit was "credible," the state habeas corpus court found that Choate made a valid strategic decision not to call Rincon's co-defendant as a witness because Choate believed that the testimony would be "detrimental" to Rincon's defense.[19] The state habeas corpus court concluded that Rincon failed to establish that he was denied the right to effective assistance of counsel at his trial.[20]

"[A] conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Pape v. Thaler, 645 F.3d 281, 291 (5th Cir. 2011) (citation and internal quotation marks omitted). Rincon has not offered any evidence to rebut the state court's fact findings or credibility determinations, which are presumed correct on federal review. See 28 U.S.C. § 2254(e)(1). He has not otherwise alleged any facts showing that his defense counsel's strategic decision was ill conceived or that

---

[18] Findings of Fact and Conclusions of Law, Docket Entry No. 16-39, p. 25 ¶ 5.

[19] Id. ¶¶ 8 and 10.

[20] Id. at 26 ¶ 2 (citing Strickland v. Washington, 466 U.S. 668, 669 (1984)).

the state habeas corpus court's conclusion was contrary to or an unreasonable application of the highly deferential Strickland standard that applies on federal habeas review. See Richter, 131 S. Ct. at 788 (emphasizing that the standards created by Strickland and § 2254(d) are both "highly deferential," and "doubly so" when applied in tandem) (citations and internal quotation marks omitted); Beatty v. Stephens, 759 F.3d 455, 463 (5th Cir. 2014) (same). Accordingly, Rincon does not show that he is entitled to relief on this claim.

## B. Ineffective Assistance of Counsel on Appeal (Claim 2)

Rincon contends that he was denied effective assistance of counsel on appeal because his attorney did not challenge the sufficiency of the evidence against him or his trial attorney's deficient failure to call co-defendant Jose Vazquez as a defense witness.[21] The state habeas corpus court summarily rejected this claim, concluding that a challenge to the sufficiency of the evidence would not have been successful because the state presented "[a]mple evidence" linking Rincon to the cocaine and because Rincon failed to show that he was denied effective assistance of counsel at trial.[22]

A claim of ineffective assistance on appeal is governed by the above-referenced Strickland standard, which requires the defendant

---

[21]Petition, Docket Entry No. 1, p. 6.

[22]Findings of Fact and Conclusions of Law, Docket Entry No. 16-39, p. 26 ¶ 2.

-12-

to establish both constitutionally deficient performance and actual prejudice. To establish that appellate counsel's performance was deficient in the context of an appeal, a petitioner must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal -- that is, that counsel unreasonably failed to discover non-frivolous issues and raise them. Smith v. Robbins, 120 S. Ct. 746, 764 (2000). If the petitioner succeeds in such a showing, he must also establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." Id.

The record reflects that Rincon's appellate attorney (Rick Brass) filed an articulate, well-researched brief, which asserted seven points of error for consideration on appeal.[23] Rincon does not allege facts to support his claim that counsel was deficient for failing to raise any other issue on appeal or that the result would have been different if he had. The Fifth Circuit has made clear that conclusory ineffective-assistance claims do not merit federal habeas corpus relief. See, e.g., Collier v. Cockrell, 300 F.3d 577, 587 (5th Cir. 2002) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.") (citing Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000));

---

[23]Brief For Appellant, Docket Entry No 15-8, pp. 1-48.

Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) (holding that the petitioner's conclusory allegations failed to establish a valid ineffective assistance of counsel claim).

As explained above, Rincon has failed to establish that he had a valid ineffective-assistance claim against his trial counsel. The court's own review of the record confirms that there was more than sufficient evidence to show that Rincon was actively involved in the drug transaction that formed the basis for his conviction. There was testimony at trial showing that Rincon was the person responsible for providing the cocaine and that he was more than merely present during a meeting with an undercover DEA agent, where the transaction was negotiated at arms' length.[24] After viewing all of the evidence as required in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 99 S. Ct. 2781, 2789 (1979) (holding that a conviction passes constitutional muster where a reviewing court concludes that, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

[24]Court Reporter's Record, vol. 6, Docket Entry No. 15-23, pp. 63, 72-75, 89-99, 107, 111-15).

doubt") (emphasis in original). Rincon does not otherwise show that the state habeas corpus court's decision to reject the ineffective-assistance claim levied at his appellate attorney was objectively unreasonable under Strickland. Therefore, he is not entitled to relief on this claim.

## C. Prosecutorial Misconduct (Claim 3)

Rincon contends that the prosecutor engaged in misconduct by failing to disclose exculpatory evidence that a co-defendant (Jose Vazquez) claimed responsibility for the drugs, which would have shown that Rincon had no "affirmative links" to the cocaine that formed the basis for his conviction.[25] The respondent correctly notes that a claim concerning the state's failure to disclose exculpatory evidence arises under Brady v. Maryland, 83 S. Ct. 1194 (1963), and that Rincon did not raise a Brady claim in state court.[26] Because Rincon has no available avenue to return to state court to exhaust this claim, the respondent argues that it is procedurally barred from federal review.[27] Alternatively, the respondent argues that the claim lacks merit.[28]

---

[25]Petition, Docket Entry No. 1, p. 7.

[26]Respondent's MSJ, Docket Entry No. 14, pp. 14-19.

[27]Id. at 14-17.

[28]Id. at 18-19.

### 1. The Claim is Procedurally Barred

Review of the state court record reflects that, although Rincon lodged several allegations of prosecutorial misconduct in his state habeas Application,[29] he did not mention a failure to disclose evidence or raise his proposed Brady claim on state habeas corpus review. He therefore failed to exhaust his available state remedies as required by 28 U.S.C. § 2254(b). Rincon's failure to exhaust state court remedies when he had the chance to do so constitutes a procedural default that is adequate to bar federal review. See Neville v. Dretke, 423 F.3d 474, 480 (5th Cir. 2005) (concluding that unexhausted claims, which could no longer be raised in state court due to Texas' prohibition on successive writs, were procedurally defaulted); see also Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (same) (citing Fearance v. Scott, 56 F.3d 633, 642 (5th Cir. 1995)).

If a petitioner has committed a procedural default, federal habeas corpus review is available only if he can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 111 S. Ct. 2546, 2565 (1991). To satisfy the exception reserved for fundamental miscarriages of justice, a petitioner must provide the court with evidence that would support

---

[29]See Application, Docket Entry No. 16-37, pp. 15-28.

-16-

a "colorable showing of factual innocence." Kuhlmann v. Wilson, 106 S. Ct. 2616, 2627 (1986). Rincon makes no showing of factual innocence, and he does not otherwise attempt to explain or demonstrate cause for his default. Accordingly, Rincon's Brady claim is procedurally barred from federal review.

### 2. The Claim Lacks Merit

More importantly, Rincon's Brady claim lacks merit for reasons explained by the respondent. To prove a Brady claim a petitioner "must show three things: (1) the evidence at issue is favorable to the defense, either because it is exculpatory or impeaching, (2) the prosecution suppressed the evidence, and (3) the evidence is material." Murphy, 2018 WL 4042362, at *13 (citing United States v. Brown, 650 F.3d 581, 587-88 (5th Cir. 2011)). "Suppressed evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Id. (quoting United States v. Bagley, 105 S. Ct. 3375, 3383 (1985)).

The record reflects that Rincon's trial attorney was aware that Jose Vazquez had signed an affidavit attempting to exonerate his co-defendants and that counsel interviewed Vazquez before deciding not to call Vazquez as a witness at trial.[30] Because this evidence was known to defense counsel, it was not suppressed. See Brown, 650 F.3d at 588 (Evidence is not suppressed for purposes of

---

[30]Affidavit, Docket Entry No. 16-39, p. 9.

establishing a violation of Brady "'if the defendant knows or should know of the essential facts that would enable him to take advantage of it.'") (quotation omitted). For this additional reason, Rincon is not entitled to relief on this claim. Because Rincon has failed to establish any valid claim for relief, Respondent's MSJ will be granted and this case will be dismissed.

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck v. Davis, 137 S. Ct. 759, 773 (2017) (citation and internal quotation marks omitted).

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See

Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

### V. Conclusion and Order

The court **ORDERS** as follows:

1. Respondent Lorie Davis's Motion for Summary Judgment (Docket Entry No. 14) is **GRANTED**.

2. Lauro Grimaldo Rincon's Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

3. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 31st day of August, 2018.

	SIM LAKE
	UNITED STATES DISTRICT JUDGE